**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 19-6186**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAVE ANDRAE TAYLOR,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Robert E. Payne, Senior District Judge. (3:99-cr-00145-REP-2)

_____

Submitted: March 17, 2020                        Decided: May 12, 2020

_____

Before KEENAN and RUSHING, Circuit Judges, and Thomas E. JOHNSTON, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

_____

Vacated and remanded by unpublished opinion. Judge Keenan wrote the opinion, in which Judge Rushing and Judge Johnston concurred.

_____

Geremy C. Kamens, Federal Public Defender, Alexandria, Virginia, Robert J. Wagner, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Heather Hart Mansfield, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Dave Andrae Taylor appeals from the district court's denial of his motion for a sentence reduction under 18 U.S.C. § 3582(c)(2). After considering the parties' arguments, we conclude that our decision in *United States v. Martin*, 916 F.3d 389 (4th Cir. 2019) is controlling, and we hold that the district court erred by failing to address Taylor's mitigation evidence that accrued after his original sentencing. Therefore, we vacate the district court's judgment denying Taylor's motion and remand the case for additional consideration and explanation.

I.

In 1999, Taylor, who was 21 years old, pleaded guilty to (1) conspiracy to distribute and possession with the intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846 (the drug conspiracy count), and (2) possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) (the firearm count). The district court accepted Taylor's guilty plea. However, before sentencing, Taylor moved to withdraw his guilty plea, which the district court denied.

In Taylor's presentence report (PSR), the probation officer calculated Taylor's offense level at 43 and his criminal history category at II. These calculations resulted in a Guidelines range of life imprisonment on the drug conspiracy count, and a consecutive 60-month term of imprisonment on the firearm count. The offense level calculation included a three-level enhancement for Taylor's managerial role in the conspiracy and a two-level enhancement for obstruction of justice.

3

Taylor objected to imposition of these enhancements. He also objected to the probation officer's recommendation that he be assigned responsibility for 2,759 grams of cocaine base and to the probation officer's criminal history calculation, which included a conviction for unlawful wounding committed while Taylor was incarcerated and awaiting sentencing. Finally, Taylor requested a downward departure because his coconspirators, including the leader of the drug conspiracy, had received lower sentences.

After conducting an evidentiary hearing, the district court overruled each of Taylor's objections and denied his motion for a downward departure. Addressing the managerial role enhancement, the court found that Taylor served as "an enforcer in the conspiracy," by "threatening people" and "telling other people what to do," and that Taylor was "involved at every stage of the offense."

The district court also determined that the obstruction of justice enhancement was warranted based on threatening statements Taylor had made concerning the lead investigator working on Taylor's case, including a statement threatening to harm the investigator's child. With respect to the amount of cocaine base for which Taylor was responsible, the court found that Taylor "bought and/or sold," "supervised," and "collected money" for at least 14.5 kilograms of cocaine base, a figure higher than the 2,759 grams recommended by the probation officer in the PSR.

In denying Taylor's request for a downward departure, the court observed that Taylor's sentence was longer than his coconspirators' sentences based on his enhancement for obstruction of justice and because he was ineligible for an offense-level reduction for acceptance of responsibility after seeking to withdraw his guilty plea. Ultimately, the

4

district court imposed a sentence of life imprisonment on the drug conspiracy count, and a 60-month consecutive term of imprisonment on the firearm count. We upheld Taylor's conviction and sentence on appeal. *United States v. Taylor*, No. 00-4311, 2000 WL 1763466 (4th Cir. Nov. 30, 2000) (per curiam).

In 2015, Taylor filed a pro se motion requesting a sentence reduction on the drug conspiracy count based on Amendment 782 of the Guidelines, adopted in 2014, which reduced the base offense level for certain drug offenses by two levels.[1] U.S.S.G. app. C., amend. 782 (2014) (Amendment 782). The district court denied the motion, observing that Taylor recently had been accused of "threaten[ing] bodily harm" to another while in prison. We affirmed the district court's judgment. *United States v. Taylor*, 632 F. App'x 142 (4th Cir. 2016) (per curiam).

In 2016, Taylor filed a second pro se motion under Amendment 782 for reduction of his sentence on the drug conspiracy conviction, arguing that his prior prison infraction for threatening bodily harm had been expunged from his record. The district court construed this pleading as a motion for reconsideration and held that the court lacked jurisdiction to review such a motion. We vacated that decision, holding that the court had authority to consider Taylor's second motion under Amendment 782, and remanded the

---

[1] Between 2008 and 2014, before Amendment 782 was adopted, Taylor filed four pro se motions for a sentence reduction under 18 U.S.C. § 3582(c), each of which the district court denied. Taylor appealed three of the district court's rulings, and we affirmed the district court's judgment in each case in unpublished decisions. *See United States v. Taylor*, 570 F. App'x 293 (4th Cir. 2014) (per curiam); *United States v. Taylor*, 443 F. App'x 826 (4th Cir. 2011) (per curiam); *United States v. Taylor*, 323 F. App'x 229 (4th Cir. 2009) (per curiam).

case. *United States v. Taylor*, 700 F. App'x 313 (4th Cir. 2017) (per curiam) (citing *United States v. May*, 855 F.3d 271, 274 (4th Cir. 2017)).

On remand, the district court (1) ordered the probation office to prepare a "Cocaine Base Amendment Application Worksheet" with a revised Guidelines range based on Amendment 782; (2) appointed counsel to assist Taylor in filing a supplemental motion for a sentence reduction; and (3) asked the government to file a "Statement of Position" in response to Taylor's supplemental motion.[2] Relying on the district court's prior finding of 14.5 kilograms of cocaine base attributable to Taylor, the probation officer recommended a revised sentencing range of 360 months' to life imprisonment on the drug conspiracy count.

In Taylor's supplemental motion for a sentence reduction, he disputed that he was responsible for 14.5 kilograms of cocaine base. He also observed that his coconspirators already had been released from prison, and argued that he would not be a danger to the community if his sentence were reduced because he was subject to a pending immigration order of removal directing that he be returned to Jamaica.

Taylor further offered evidence in mitigation, including evidence that he had been rehabilitated during his nearly 20 years in prison. First, he submitted letters written by family members, a fellow inmate, his prison case manager, and Taylor himself, suggesting

---

[2] The district court asked the government to address whether Taylor was eligible for a sentence reduction, Taylor's projected release date, the impact of an accelerated release date on Taylor's educational and vocational training, Taylor's post-sentencing conduct while in prison, public safety considerations, and the government's overall position on Taylor's request.

that he was "a loving and caring father," "was not a violent person," and was "immature" when he committed the underlying offenses. In addition, a Rastafarian chaplain stated that Taylor "leads the members of his religious community . . . mentoring younger inmates . . . to be respectful to others" and advises those younger inmates to "stay out of trouble."

Taylor further submitted as mitigation evidence his prison record, which contained only five minor infractions. He also presented evidence of his achievements in educating himself while serving a life sentence, including completion of his GED, hundreds of hours of additional courses, and thousands of hours of work programs.

In response, the government agreed that Taylor was eligible for a sentence reduction under Amendment 782, and did not object to his revised advisory Guidelines range. However, the government opposed Taylor's motion for a sentence reduction, arguing that a term of life imprisonment was necessary to reflect the seriousness of Taylor's original criminal conduct and to protect the public. In particular, the government cited: (1) Taylor's acts of violence and threats of violence during the drug conspiracy, including his involvement in an unsuccessful plan to kill rival drug distributors; (2) his threats directed at individuals who owed him money for drugs; and (3) his threat involving the lead investigator working on his case.

The district court issued an order denying Taylor's motion, stating that it had considered his motion and addendums, the government's response, and the revised Guidelines range. The court explained:

> The defendant's sentence is appropriate as originally imposed because of the defendant's extensive involvement in the crimes of conviction and the volume of drugs distributed by the conspiracy of which the defendant was a

7

leader (14.5 kilograms of crack cocaine for which the defendant was determined to be held responsible); and because the conspiracy was a violent one and that the defendant participated in violence in several ways, including threatening the lives of other individuals to collect drugs; threatening the mother of one of his drug customers; and threatening the family of one of the investing [sic] agents. . . . Therefore, the Court concludes that in order to protect the public, to deter the defendant, to promote respect for the law, and to reflect the seriousness of the defendant's offense, it would be inappropriate to grant a reduction of sentence . . . .

Taylor appeals from the district court's ruling.

## II.

A district court generally cannot "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, when the Sentencing Commission later reduces a Guidelines sentencing range and makes that adjustment retroactive, a district court can modify a prisoner's previously imposed sentence after applying a two-step inquiry. *Id.* § 3582(c)(2). First, the court must determine whether the prisoner is eligible for a sentence modification and to what extent his sentence may be reduced. *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019) (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010)). Second, the court must "consider any applicable" factors under 18 U.S.C. § 3553(a) to "determine whether, in [the court's] discretion, the reduction authorized . . . is warranted in whole or in part under the particular circumstances of the case." *Id.* (quoting *Dillon*, 560 U.S. at 827).

In the present case, the parties do not dispute that Taylor was eligible under Amendment 782 for a sentence reduction, nor do they dispute the extent of the potential sentence reduction. Instead, this case raises the question whether the district court provided

8

a sufficiently individualized explanation for its decision. We consider this issue de novo. *Martin*, 916 F.3d at 395.

When imposing a sentence, a district court must provide an adequate explanation for its chosen sentence "to satisfy the appellate court that [the sentencing court] has considered the parties' arguments and has a reasoned basis for exercising" its authority. *United States v. Chavez-Meza*, 138 S. Ct. 1959, 1964 (2018) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). The extent of that required explanation depends on "the circumstances of the particular case." *Id.* at 1965 (citing *Rita*, 551 U.S. at 356-57).

At issue in the Supreme Court's decision in *Chavez-Meza* was a defendant's motion for a sentence reduction under 18 U.S.C. § 3582(a)(2). *Id.* at 1965-67. The Court assumed, without deciding, that a district court has "equivalent duties when initially sentencing a defendant and when later modifying [a] sentence," and ultimately held that the explanation given by the district court was adequate. *Id.* at 1965-66.

Recently, in *United States v. Martin*, 916 F.3d 389 (4th Cir. 2019), we referenced the decision in *Chavez-Meza* in deciding whether a district court adequately had explained its denial of certain requests for a reduced sentence under Amendment 782. *Id.* at 395-97. We held that, in denying a motion for a reduction in sentence under Amendment 782, a district court is required to "provide an individualized explanation" addressing the substance of the defendant's motion. *Id.* at 397.

Like the defendant before us, the defendant in *Martin* had been convicted of leading a conspiracy involving a large quantity of cocaine and heroin and had received a life

9

sentence.[3]  *Id.* at 392.  Upon application of Amendment 782, Martin's sentencing range was computed at 360 months to life in prison.  *Id.*  The district court declined to reduce Martin's sentence, stating that it had considered the severe nature of Martin's underlying crime, and had weighed the sentencing factors set forth in 18 U.S.C. § 3553(a).  *Id.* at 393.

We concluded that the district court's explanation was inadequate because Martin had submitted a "mountain of new mitigating evidence," including evidence that she had completed her GED, had served as a tutor to other prisoners, and had exhibited "exemplary behavior" while in prison.  *Id.* at 396.  We also observed that the district court had failed to address the fact that Martin would be 84 years old if released after serving a reduced sentence of 360 months in prison.  *Id.* at 393, 396.  We explained that despite Martin's life sentence, she had "str[ived] to better herself," and that the district court under these circumstances was required to "provide an individualized explanation for why Martin's steps toward rehabilitation are meaningless."  *Id.* at 397.

Similarly, here, the district court did not address Taylor's evidence in mitigation, but merely recited Taylor's "original criminal behavior" and failed to assess the many "redemptive measures" that had occurred post-conviction during the long period of Taylor's incarceration.[4]  *Id.*  Although the district court plainly found persuasive the nature

---

[3] In *Martin*, we also considered whether the district court adequately explained its denial of a similar motion made under Amendment 782 by a second defendant.  916 F.3d at 394-95, 397-98.

[4] The government also asserts that the court "clearly considered" Taylor's post-sentencing mitigation evidence because the court had requested a variety of information from the parties.  But merely requesting evidence does not demonstrate that the district (Continued)

10

of Taylor's role in the drug conspiracy, including his prior threats of violence, the court's order lacked an individualized explanation regarding Taylor's efforts to rehabilitate himself.

Like Martin, Taylor presented evidence that, despite his life sentence, he had sought to improve himself by completing his GED, taking numerous classes, and performing work in prison. He also presented evidence that he was viewed as a leader in his prison community and had encouraged other inmates to improve themselves. In addition to this evidence, the district court also failed to address the impact of Taylor's pending order of removal to Jamaica, namely, whether he still would be a threat to the public if he were released earlier than originally ordered. Thus, we conclude that the district court erred in failing to explain why Taylor's mitigation evidence was outweighed by the nature of the original criminal conduct committed two decades earlier. *See id.* at 398.

Our conclusion is not affected by the government's assertion that Taylor's case is distinguishable from *Martin* because Taylor sought to "relitigate" the district court's prior factual findings regarding attributable drug quantity and the alleged disparity in his sentence when compared to the sentences of his coconspirators. Apart from these unsuccessful challenges to the district court's original judgment, Taylor's arguments in mitigation reflected evidence that accrued after his original sentencing[5] and warranted

---

court considered the weight of such evidence, thereby making the court's rationale reviewable on appeal.

[5] This evidence includes that Taylor's coconspirators now have been released. The district court should consider this on remand under 18 U.S.C. § 3553(a)(6).

consideration by the district court in a manner sufficient to permit our review of its decision on appeal.[6]

III.

For these reasons, we vacate the district court's judgment, and remand the case for further proceedings in the district court.

*VACATED AND*
*REMANDED*

---

[6] The government also maintains that "any error in the district court's sentencing explanation [was] harmless." We disagree. On this record, which leaves us guessing regarding the sentencing court's evaluation of Taylor's evidence in mitigation, we conclude that the government has failed to carry its burden to establish harmless error. *See United States v. Boulware*, 604 F.3d 832, 838 (4th Cir. 2010) (explaining that a determination of harmless error requires us to conclude "with fair assurance that the district court's consideration of the defendant's arguments would not have affected the sentence imposed" (citation and alterations omitted)); *see also United States v. Patterson*, — F.3d — , No. 18-4402, 2020 WL 1966842, at *9 (4th Cir. Apr. 24, 2020) (rejecting the government's harmless error analysis, stating that "nothing in the record explicitly indicates that [the district court] would have imposed the same sentence regardless of whether it considered any specific mitigation factors").